**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS ROBERT HOSKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00249-RK |
| | ) | |
| COMMISSIONER OF SSA, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Plaintiff Nicholas Robert Hoskins' appeal brought under 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). After careful consideration and for the reasons explained below, the Court **ORDERS** that the ALJ's decision is **AFFIRMED**.

**Standard of Review**

The Court's review of the ALJ's decision denying Plaintiff's protective applications for social security benefits is limited to whether the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). Put another way, "we will affirm if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025) (internal quotation marks omitted).

An ALJ's "failure to comply with [Social Security Act] regulations . . . is [reversible] legal error." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). To determine whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (internal quotation marks omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014)

(citing *Davis*, 239 F.3d at 966). On judicial review of the ALJ's decision, the Court does not "re-weigh the evidence presented to the ALJ," *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)), and must "defer heavily to the findings and conclusions of the [ALJ]," *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

**The Five Step Sequential Analysis for Disability Benefits**

To determine whether a claimant is entitled to benefits under the Social Security Act, the ALJ utilizes a familiar five-step analysis found at 20 C.F.R. §§ 404.1520(a) & 416.920(a), as follows:

At Step One the ALJ considers whether the claimant is engaged in substantial gainful work activity. If not, the ALJ moves to Steps Two and Three to consider whether the claimant has a severe medically determinable physical or mental impairment, or a combination thereof (Step Two), and whether any such impairments meet or are medically equivalent to a Listed Impairment (Step Three). If the ALJ finds that a claimant's impairments, individually or in combination, meet or medically equal a Listed Impairment, the claimant is entitled to disability benefits. Otherwise, the ALJ moves to Step Four of the analysis to assess and consider the claimant's residual functional capacity ("RFC")[1] and to determine whether the claimant can still do any past relevant work considering the claimant's RFC as assessed by the ALJ. In doing so, the ALJ is required to consider the persuasiveness of medical opinions and prior administrative medical findings. *See* 20 C.F.R. §§ 404.1520c & 416.920c. If the ALJ finds that the claimant can perform past relevant work given the ALJ's RFC determination, the claimant is not entitled to benefits. However, if the claimant is unable to perform past relevant work given their assessed RFC, the ALJ finally considers at Step Five whether the claimant can do other work that exists in significant numbers in the national economy considering the claimant's RFC, alongside their age, education, and work experience, and the corresponding testimony of a vocational expert. If the ALJ determines that the claimant cannot do so, the claimant is entitled to disability benefits.

[1] A claimant's RFC "is the most [the claimant] can do" despite any "physical and mental limitations that affect what [the claimant] can do in a work setting" caused by an claimant's impairment(s) and related symptoms. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). The ALJ's RFC assessment must be based on "all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (internal quotation marks omitted). Although it is a medical question and must be based on some medical evidence, "it is ultimately an administrative determination" for the ALJ. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

## Discussion

By way of overview, the ALJ found that Plaintiff has the following severe impairments: autism-spectrum disorder; bipolar disorder; attention deficit hyperactivity disorder ("ADHD"); and oppositional defiant disorder ("ODD"). The ALJ also determined that Plaintiff has the following non-severe impairments: psoriasis, gastroenteritis, fatty liver, cholestasis, history of stomach ulcers, gastroenteritis, impacted cerumen, and status post heat exhaustion with tachycardia. However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing").

Additionally, the ALJ found that despite his limitations, Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels. Plaintiff can understand, remember, and carry out simple instructions and simple work-related decisions with no strict hourly quotas. He can have no more than occasional interaction with co-workers or supervisors and no more than brief and intermittent interaction with the general public where such interaction is incidental to the job and not an essential function of the job. The ALJ found that Plaintiff had no past relevant work and that he could perform other work that exists in significant numbers in the national economy of drying room attendant, dryer attendant, and table worker.

## Plaintiff's Point on Appeal

On appeal, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the State agency consultants' opinions that the ALJ relied on predated additional evidence of inpatient hospitalization and increased mental health treatment. (Doc. 8 at 8-14.) Defendant counters that substantial evidence supports the ALJ's RFC. (Doc. 13 at 4-8.)

The RFC is the most an individual can do despite the combined effect of all his credible limitations. 20 C.F.R. § 416.945. The RFC is based on all relevant evidence in the record and is assessed at Step 4 of the sequential evaluation. *Id*. It is the claimant's burden to prove his or her RFC. *Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019); 20 C.F.R. §416.945(a)(3). But it is the ALJ's responsibility to determine the RFC based on all relevant evidence, including opinion evidence, medical records, observations of treating physicians and others, and the claimant's own description of his limitations. *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018); SSR 96-8p, 1996 WL 374184, at *5.

Plaintiff argues the ALJ's RFC finding is flawed and not supported by substantial evidence because she relied on outdated State agency consultants' opinions and her lay interpretation of the

medical records. (Doc. 8 at 8-15.) Plaintiff complains that the consultants, Dr. Brandhorst and Dr. Sullivan, issued their opinions in March and June 2023, respectively, approximately one year prior to the ALJ's decision issued in April 2024. (*See* Tr. at 82, 91-92). Dr. Sullivan reviewed Plaintiff's past medical and non-medical records and found that Plaintiff retained the ability to understand and remember simple instructions. (Tr. at 91.) She determined that Plaintiff could adapt to most usual changes common to a competitive work setting and retains the ability to perform simple work tasks away from close contact with the public or co-workers. (Tr. at 92.) Dr. Brandhorst found similarly that Plaintiff could carry out simple work instructions and adapt to changes common to a competitive work setting. (Tr. at 82.) Plaintiff argues that medical records submitted after Dr. Brandhorst's and Dr. Sullivan's opinions were issued include evidence of inpatient hospitalization for his mental health issues from June 12-21, 2023, and show that he started attending weekly therapy sessions and began receiving additional medication management and community support services. (*See, e.g.*, Tr. at 789, 1037, 1050, 1054-1055, 1061, 1076, 1084, 1094, 1100.) Thus, Plaintiff argues that the evidence subsequent to the consultants' opinions demonstrated an increase in mental symptoms that were inconsistent with the consultants' review of the records.

First, there is no requirement that an RFC finding must be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Instead, ALJs are required to assess the persuasiveness of medical opinions at the source-level, considering whether the opinions are supported by and consistent with the record and other factors. 20 C.F.R. § 416.920c(b)-(c). Indeed, there is no requirement that the ALJ structure his RFC finding on medical opinions at all. *See Stringer v. Berryhill*, 700 F. App'x 566, 567-68 (8th Cir. 2017) ("While there were no medical opinions, it appears the medical evidence would have supported even a less restrictive RFC."); *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (rejecting substantial-evidence challenge to mental RFC after finding that the ALJ "properly discounted" the treating physician's opinion because it was inconsistent with the physician's own treatment notes); *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (similar). Instead, some medical <u>evidence</u> must support the RFC. *Hensley*, 829 F.3d at 932. Under the regulations, there are several types of "medical evidence" beyond medical opinions—including medical signs, laboratory findings, medical history, clinical findings, diagnosis, treatment notes, and prescribed medical treatment with response—that may be considered. 20 C.F.R. § 416.913(a).

Here, the ALJ cited objective medical evidence, treatment notes, treatment history, and clinical findings when addressing Plaintiff's RFC. The ALJ reviewed the prior administrative medical findings ("PAMFs") of Dr. Brandhorst and Dr. Sullivan, as well as Plaintiff's own statements, and treatment notes that showed his improvement with conservative treatment; his mental status examinations that routinely documented no significant abnormalities in attention, memory, orientation, thought content, appearance, thought process, judgment, insight, psychomotor activity, speech, concentration, recall, or cognitive functioning; and his activities that included preparing simple meals, taking out trash, shopping, and playing video combat games. (Tr. at 36-40, 236-239, 594, 609, 622, 632, 657.) Moreover, the ALJ recognized that the PAMFs were limited—finding the opinions only "partially persuasive"—specifically because the medical records reviewed did not include the subsequent record, most notably Plaintiff's June 2023 hospitalization. (Tr. at 40.)

In considering his mental impairments, the ALJ found that diagnoses exist, but the severity is not supported in the medical records. The ALJ reviewed the record and noted that it indicates that Plaintiff has been diagnosed with a variety of mental impairments, including bipolar disorder, ADHD, autism-spectrum disorder, bipolar II disorder, intermittent explosive disorder, oppositional defiant disorder, bipolar I disorder, depression, and anxiety. (Tr. at 37.)

The ALJ noted that the objective medical evidence and Plaintiff's mental health treatment do reflect that he has some difficulties with social interactions and may have some problems with greater than simple instructions that would reduce his ability to perform work activities. (Tr. at 38.) However, as she observed, the evidence does not reflect a significant loss of abstraction or intellectual ability, or an inability to learn new information, remember information that was known sometime in the past, interact with verbal and nonverbal communication, control his movements, or control his behavior, such that further limitations beyond those in the determined RFC would be appropriate. (*Id.*)

Further, the ALJ reviewed the evidence submitted to the record subsequent to the consultants' opinions, specifically the medical evidence of Plaintiff's June 2023 inpatient hospitalization along with the treatment and findings related to his impairments. (Tr. at 37-40). She observed that Plaintiff subsequently reported that, despite having thoughts and ideation, he had no intentions or plans, and he was treated with medication, individual therapy, and group therapy. (Tr. at 37.) The ALJ noted that Plaintiff generally improved and was discharged on only one antipsychotic medication. (*Id.*) The ALJ also recognized that prior to his hospitalization,

Plaintiff's treatment notes supported that his medication was generally effective at stabilizing his symptoms. (Tr. at 38.) After Plaintiff began treatment with Compass Health Network, a community mental health center, in October 2022, he only had monthly medication management visits and in April 2023 had reported that he had never been better. (*Id.*) Right before his hospitalization, he sought community support services but reported no concerns other than that he often missed his medication during the day. (*Id.*)

Overall, the record shows that the ALJ thoroughly considered Plaintiff's psychological symptoms and their effect on him by considering the medical record and other evidence both before and after his June 2023 hospitalization. The ALJ considered factors beyond the PAMFs such as Plaintiff's testimony; his improvement with conservative treatment; his mental status examinations that routinely documented no significant abnormalities in attention, memory, orientation, thought content, appearance, thought process, judgment, insight, psychomotor activity, speech, concentration, recall, or cognitive functioning; and his activities of daily living that included preparing simple meals, taking out trash, shopping, and playing video combat games. (Tr. at 37-39, 236-239, 594, 609, 622, 632, 657.) Other than the acute exacerbation that caused the June 2023 hospitalization, Plaintiff's mental status examinations demonstrated intermittent mood issues but routinely had no noted indications of significant abnormalities in attention, memory, orientation, thought content, appearance, goal-directed thought process, judgment, insight, psychomotor activity, speech, concentration, recall, cognitive functioning, auditory hallucinations, visual hallucinations, suicidal ideation, or homicidal ideation. (Tr. at 594, 601-602, 622-657, 811, 842, 960, 987, 1017, 1038, 1068, 1107.) The ALJ particularly noted that Plaintiff was not noted to be responding to internal stimuli and that while he was diagnosed with autism-spectrum disorder with mild intellectual disability during his June 2023 hospitalization, the medical evidence of record does not reflect recurrent diagnoses of an intellectual disorder, multiple mental status examinations that indicate average intellect, or supportive adult intelligence testing. (Tr. at 377-379, 382, 791.)

Given the numerous citations to the record and the discussion of the evidence, the Court does not find reversible error in the ALJ's RFC determination. Because substantial evidence supports the ALJ's RFC, the Court must "defer heavily" to the ALJ's findings and conclusions and affirm. *Wright*, 789 F.3d at 852. "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the [ALJ]." *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (quotation omitted). Plaintiff fails

to show that the ALJ's decision is not supported by substantial evidence. While the ALJ considered the PAMFs, she ultimately based her RFC determination upon her independent review of the record as a whole. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002) (ALJ did not solely rely on the consulting physician's opinion, but also conducted an independent review of the medical evidence).[2]

**Conclusion**

Therefore, after careful consideration and review, and for the reasons set forth above, the Court **ORDERS** that the ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: September 10, 2026

[2] Additionally, Plaintiff has not shown that the ten pages of additional records he submitted to the Appeals Council undermined the ALJ's decision. (Tr. at 2, 8-18). The regulations provide that the Appeals Council will review an ALJ's decision, with respect to additional evidence it is provided, when that evidence is new, material, relates to the period on or before the ALJ's decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision. *See* 20 C.F.R. § 416.970(a)(5). Plaintiff has not shown there was a reasonable probability that the additional evidence would have changed the outcome of the decision. In addition, the Court notes that the RFC as assessed by the ALJ appears largely consistent with Dr. Calloway's opinion. (*See* Tr. at 13-14.)